1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,              No.  1:13-MJ-0336 DAD

12              Plaintiff,

13        v.                                 ORDER RE DEFENDANT'S MOTION

14    MICHAEL S. KEEVER,                      TO SUPPRESS EVIDENCE

15              Defendant.

16

17        On November 26, 2013, after the motion was fully briefed, the court held an evidentiary

18    hearing on the motion to suppress evidence filed in the above-entitled action on behalf of

19    defendant Michael S. Keever.  Special Assistant U.S. Attorney Michael Stanley appeared on

20    behalf of the United States.  Chief Assistant Federal Defender Linda Harter and Certified Law

21    Student Gregory Hayes appeared on behalf of the defendant.

22        For the reasons set forth below, defendant Keever's motion to suppress evidence will be

23    denied.

24                                        FACTS

25        Defendant Michael Keever is charged in this misdemeanor action with creating a nuisance

26    at a federal facility, obstruction of a lobby and impeding the performance of official duties, all in

27    violation of 40 U.S.C. § 121 and C.F.R. § 102-74.390, as well as failing to comply with official

28    signs and directions in violation of 40 U.S.C. § 121 and C.F.R. § 102-74.385.

1

1   Those charges from a May 2, 2013 incident that took place at a Social Security

2   Administration (SSA) Office in Stockton when defendant Keever sought entrance to the building.

3   When Keever was told to remove all metal objects from his person before passing through the

4   building's metal detector, he objected and began arguing with the security officers.  Eventually

5   Keever complied with the officers' instructions but continued to object and indicated that he

6   would be filing a complaint.  Thereafter, while in line awaiting service, Keever raised his cell

7   phone and pointed it at the security screening area.  When told by the security officers that he was

8   not allowed to photograph the area, Keever again argued with them.  When Keever responded to

9   one of the officers "fuck you, asshole" he was instructed to leave the building, but he refused to

10  do so.  After initially resisting, Keever was eventually handcuffed by the security officers and

11  seated inside the building while Federal Protective Service (FPS) Officers were contacted.

12   FPS Agent Skultety testified at the evidentiary hearing as follows.  When Skultety and

13  FPS Inspector Pellegrini arrived at the SSA building defendant Keever was seated in a chair

14  handcuffed and was leaning forward, sweating profusely, shaking and appeared to be very upset.

15  Skultety found Keever's sweating to be unusual and it appeared that Keever was possibly in pain

16  and almost crying.  The security officers on the scene told Skultety that they had put Keever on

17  the ground in handcuffing him and that Keever had stomach staples from a recent surgery.

18  Because he was concerned about Keever's medical and mental condition, Skultety asked Keever

19  "are you OK?"  After Keever responded that he was, Skultety asked about any medications

20  Keever was taking and learned that there were five.  Skultety was specifically concerned about

21  Keever's stomach staples and asked whether Keever wanted an ambulance.  Keever declined but,

22  in response to inquiries about his condition, indicated that he'd had surgery, a knee replacement

23  and suffered from a bad back.  As Agent Skultety continued to ask Keever about his medical

24  condition,  Keever spontaneously stated that he'd "done a stupid thing" and had "let his mouth

25  override his ass" – or words to that effect - in his interaction with the security officers.

26   Skultety estimated that his questioning of Keever regarding his condition spanned a total

27  of only two to three minutes.  Once he had determined that there were no medical issues in need

28  of attention posed by Keever's condition, Agent Skultety immediately Mirandized him.  Keever

2

1   stated that he understood his rights and when asked whether he wanted to talk to Skultety about

2   what had happened, Keever stated "yeah, sure, I've been talking to you."  Thereafter Keever

3   explained that he had become humiliated and angry as he was going through the metal detector

4   when, after taking his belt off as ordered, his pants fell down.  As a result, he had sworn at the

5   security officers and behaved rudely.  Keever also indicated that he was not sure whether he had

6   captured any clear pictures of the security area with his cell phone.  Finally, Keever apologized,

7   stating that "this is all my fault, the guards didn't do anything wrong, this is all on me."

8          Defendant Keever moves to suppress his statements to Agent Skultety made before the

9   Miranda warning was given on the grounds that those statements were elicited during a custodial

10   interrogation without the required warning.  Relying on the decisions in Missouri v. Seibert, 542

11   U.S. 600, 601 (2004) and United States v. Williams, 435 F.3d 1148 (9th Cir. 2006), defendant

12   Keever moves to suppress the statements made by him to Agent Skultety after the Miranda

13   warning was given on the grounds that those statements resulted from a "deliberate two step

14   interrogation" which rendered the intervening Miranda warning ineffective.

ANALYSIS

16          For the reasons set forth below, the court concludes that defendant's motion must be

17   denied.  The court found Agent Skultety to be a very credible witness.  Agent Skultety was

18   legitimately concerned about the defendant's medical and emotional condition when he arrived

19   on the scene.[1]  It is undisputed in this case that the handcuffed defendant Keever was in custody

20   for purposes of the Miranda analysis when Agent Skultety first approached him.  However,  the

21   court concludes that Skultety questions directed to the defendant m y prior to the giving of the

22   Miranda warning did not constitute an interrogation because they focused solely on the

23   defendant's condition.

24          Of course, "Miranda  applies only 'where a suspect in custody is *subjected to*

25   *interrogation.*'"  Cox v. Del Papa, 542 F.3d 669, 675 (9th Cir. 2008) (quoting Rhode Island v.

26   Innis, 446 U.S. 291, 300 (1980).  Interrogation under Miranda refers to words or actions by the

27

28   [1]  The court also finds that Agent Skultety had good reason to be concerned in this regard under
the circumstances as he credibly described them₃

1   police that they "should know are reasonably likely to elicit an incriminating response." Innis,

2   446 U.S. at 301.  See also United States v. Orso, 266 F.3d 1030, 1033-34 (9th Cir.2001) (en banc)

3   (holding that officer should have known it was reasonably likely that engaging in discussion

4   about evidence and witnesses against the accused as well as the penalties for the crime would

5   cause the suspect to respond);United States v. Moreno-Flores, 33 F.3d 1164, 1169 (9th Cir.1994)

6   (holding that an agent's statements that the government had seized cocaine, the accused was in

7   serious trouble, and he faced a lengthy prison sentence were not the functional equivalent of

8   interrogation because they did not invite a response); Shedelbower v. Estelle, 885 F.2d 570, 573

9   (9th Cir.1989) (holding that an officer's false statement that the suspect had been identified by a

10   rape victim was not the type of comment that would encourage the accused to make some

11   incriminating spontaneous remark).

12        Here, in no way Agent Skultety should have believed that his initial questions posed to

13   defendant Keever - was Keever OK, what were his medical conditions and did he want an

14   ambulance - were reasonably likely to elicit an incriminating response.  Because the defendant's

15   pre-warning statements were spontaneously made and not in response to any interrogation, they

16   are not subject to suppression.  See United States v. Bishop, 66 F.3d 569, 572 n. 2 (3d Cir.1995)

17   ("[T]he district court did not commit clear error in finding that the police officer's question about

18   Stokes' limp was part of the booking procedure designed to fulfill the government's obligation to

19   provide medical attention if necessary."); Warriner v. Medina, Civil Action No. 11-cv-0019-

20   CMA, 2011 WL 5984082, at *5 (D. Colo. Nov. 30, 2011) (no Miranda advisement is required

21   where, although the defendant was in custody, officers' questioning "was directed to determining

22   what happened and whether the victim was injured" and therefore did not constitute an

23   interrogation); United States v. Weatherford, No. 2:11 CR 13, 2011 WL 5408441, at *12 (N.D.

24   Ind. Nov. 8, 2011) ("[The officer] could not reasonably expect his questions about defendant's

25   name and medical history were going to evoke an incriminating response.  Therefore, although

26   these questions were asked prior to Miranda warnings being given, any answers given by

27   defendant after his arrest but before receiving Miranda warnings will not be suppressed."); United

28   States v. Linderman, Crim File No 07-359 (MJD/FLN), 2008 WL 199913, at *32 (D. Minn. Jan.

4

1    22, 2008) (concluding that questions by officer's pertaining to a defendant's "physical and mental

2    health" were not intended to elicit incriminating statements and therefore did not constitute

3    interrogation in violation of Miranda).

4         Finally, because there was no interrogation of the defendant in this case prior to the giving

5    of a proper Miranda advisement, defendant Keever's initial statements to Agent Skultety were

6    spontaneous.  Therefore, the decisions in Missouri v. Seibert and United States v. Williams are

7    not applicable as to the defendant Keever's incriminating statements made after the otherwise

8    unchallenged subsequent Miranda advisement.  See Oregon v. Elstad, 470 U.S. 298, 318 (1985)

9    (holding that "a suspect who has once responded to unwarned yet uncoercive questioning is not

10   thereby disabled from waiving his rights and confessing after he has been given the requisite

11   Miranda warnings." )  Here, there simply was no use  of a two-step interrogation strategy[2] –

12   where there is a deliberate withholding of the Miranda warning until a confession is obtained

13   followed by a Miranda warning and a repetition of the already given confession – by Agent

14   Skultety in this case.  See Williams, 435 F.3d at 1157-58 (concluding that suppression of

15   evidence under the holding in Seibert is limited to those cases in which a deliberate two-step

16   interrogation strategy is employed by law enforcement and it is found under the objective facts

17   and circumstances that the midstream Miranda warning did not effectively apprise the suspect of

18   his rights); see also United States v. Smith, No. CR 11-01903-TUC-RCC(DTF), 2013 WL

19   4177805, at *9 (D. Az. Aug. 14, 2013) ("Dr. Smith did not interrogate Smith, thus there was no

20   two-step interrogation."); United States v. Badalamenti, No. 03:11-CR-0269-HZ, 2012 WL

21   5830393, at *5 (D. Or. Nov. 16, 2012) ("Despite what Defendant may have perceived, there was

22   no two-step interrogation strategy because Findley did not interrogate Defendant . . . . If there is

23   no deliberate two-step interrogation, then under Elstad, Defendant is capable of waiving his

24   Miranda rights if the prewarning statements were the result of uncoercive questioning.); United

25   States v. King, No. C 10-0455 WHA, 2010 WL 4226728, at *7 (N.D. Cal. Oct. 21, 2010)

26   (suppression not required under Seibert and Williams where no two-step interrogation occurred).

27

28   [2]  See Williams, 435 F.3d at 1154.

                                        5

1    Accordingly, defendant's motion to suppress his post-Miranda advisement statements is

2  also properly denied.

3                                               CONCLUSION

4          For the reasons set forth above defendant's motion to suppress evidence (Doc. No.

5  3) is DENIED.   The matter currently remains set for bench trial on February 12, 2014 at 9:00

6  a.m. in Courtroom No. 27.[3]

7          IT IS SO ORDERED.

8  Dated:  January 22, 2014

9

10  _____
    DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

11  Dad1.crim
    Keever13mj0336.o.suppress

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  [3]  If this scheduled trial date is no longer appropriate, counsel are directed to confer, consult with
    Courtroom Deputy Pete Buzo and submit a stipulation with a proposed order re-setting the matter
28  to an agreed upon date.                                  6